# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

Plaintiff and Respondent,

v.

SUNEE LYNN MITCHELL,

Defendant and Appellant.

S277314

First Appellate District, Division Five

A163476

Mendocino County Superior Court

SCUKCRCR2021373081

May 18, 2026

Justice Corrigan authored the opinion of the Court, in which Chief Justice Guerrero and Justices Liu, Kruger, Groban, Evans, and Bromberg* concurred.

---

* Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. MITCHELL

S277314

Opinion of the Court by Corrigan, J.

We are once again called upon to consider "the intersection of [the] statutory scheme of plea bargaining and the retroactivity rule of [*In re*] *Estrada* [(1965) 63 Cal.2d 740.]" (*People v. Prudholme* (2023) 14 Cal.5th 961, 971 (*Prudholme*).) Defendant Sunee Lynn Mitchell accepted a plea bargain, entered the standard waivers, and agreed to an upper term sentence on one felony count of a multicount information. While her case was pending on appeal the Legislature amended Penal Code[1] section 1170, which governs California's determinate sentencing law. The amendment now requires that the facts used to justify an upper term be stipulated to or proven beyond a reasonable doubt at a jury or court trial. (§ 1170, subd. (b)(2) (hereafter section 1170(b)).) The parties agree this statutory amendment applies retroactively to nonfinal judgments under *Estrada*. Mitchell's further assertion that the plea bargain, as constituted, did not satisfy the current statutory requirements is likewise not contested by the Attorney General.

The parties' point of disagreement centers on the effect, if any, of section 1170(b)'s provisions on the negotiated disposition. Mitchell argues she should continue to have the benefits of her plea bargain, including the dismissal of counts and insulation from exposure to a substantially higher sentence. However, she

_____

[1]     All further undesignated statutory references are to the Penal Code.

1

urges the upper term sentence she agreed to should be reduced to the middle term. The Attorney General argues the agreement should be enforced in its entirety because the trial court did not impose a sentence under the provisions of section 1170(b), but rather upon the terms of the bargain.

We reject both positions. We hold that defendants like Mitchell, who agreed to an upper term sentence as part of a plea bargain, may seek the retroactive benefit of section 1170(b)'s amended provisions to their nonfinal judgments. We reverse the Court of Appeal's contrary holding and direct that the matter be returned to the trial court in a manner similar to the approach adopted in *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). On remand, Mitchell may either waive or invoke section 1170(b)'s requirements. If she reaffirms her acceptance of the plea bargain and waives the rights now conferred under section 1170(b), the court shall reinstate the original sentence as negotiated by the parties. If she declines to enter that waiver, in lieu of further proceedings the parties may agree to modify the existing plea bargain and accept a midterm base sentence on count 4, then seek the court's approval of that downward departure. Absent a modified agreement and approval, Mitchell's remedy is to withdraw her assent to the bargain, in which case Mitchell's plea will be set aside and the parties returned to a pre-plea posture. At that point they would remain free to renegotiate further if they choose or to proceed to trial.

## I.  BACKGROUND[2]

Early in the morning of November 29, 2020, Officer Saul Perez of the Ukiah Police Department saw Mitchell driving a Nissan Pathfinder.  He watched as Mitchell backed up over a curb, nearly hit pedestrians, and sped off.  The officer spoke briefly with the pedestrians, who reported that Mitchell had been "doing donuts" in a parking lot and tried to hit them with her car.  The officer pursued Mitchell using his emergency lights and siren.  Mitchell drove through a red light, made an illegal U-turn, then sped directly towards the officer's patrol car.  He backed up to avoid being hit and Mitchell came within a foot of running into his cruiser.  Mitchell drove off, crossed the center line, and continued driving in the oncoming traffic lane.  With Perez still in pursuit, Mitchell ran another red light and reached speeds of about 70 miles per hour on city streets.  When Mitchell finally pulled over, she refused to step out of her car.  An assisting officer broke the driver's side window in order to detain her.  Following her arrest Mitchell provided a breath sample, revealing a blood-alcohol content (BAC) of 0.183 percent.  In a later interview, witness Jacob Waltrip confirmed that Mitchell had been driving recklessly in a parking lot.  As she backed out of the lot and crossed the sidewalk Waltrip was unable to move out of the way and Mitchell ran over his feet.

The district attorney charged Mitchell with four felonies: count 1, assault on a peace officer (Perez) (§ 245, subd. (c)); count 2, assault with a deadly weapon (Waltrip) (§ 245, subd. (a)(1)); count 3, driving against traffic while evading a peace officer

---

[2]      Because there was no trial, we summarize the evidence presented at the preliminary hearing, as did the Court of Appeal opinion below.

(Veh. Code, § 2800.4); and count 4, driving with willful or wanton disregard for safety while fleeing from an officer (*id.*, § 2800.2, subd. (a)).  She was also charged with misdemeanor driving under the influence (*id.*, § 23152, subd. (a)), and misdemeanor driving with a BAC of 0.08 percent or higher (*id.*, § 23152, subd. (b)).  The information included sentencing allegations that Mitchell drove with a BAC of 0.15 percent or more (*id.*, § 23578) and that she had suffered a prior strike conviction for robbery (Pen. Code, §§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)).

At the time of her crimes, and today, the following punishments apply:  count 1 is punishable by three, four, or five years imprisonment; count 2 by two, three, or four years; counts 3 and 4 by 16 months, two years, or three years.[3]  Then and now, Mitchell's prior robbery conviction brings her within the "Three Strikes" sentencing scheme providing that her base prison term be doubled.  (§§ 667, subds. (d)(1), (e)(1), 667.5, subd. (c)(9).)  Counts 1 and 2 could be separately punished as crimes of violence involving separate victims (*People v. Oates* (2004) 32 Cal.4th 1048, 1063; *People v. McFarland* (1989) 47 Cal.3d 798, 803–804; *People v. Hall* (2000) 83 Cal.App.4th 1084, 1089–1090) and would constitute additional strikes exposing her to a 25-year-to-life term should she commit a new serious or violent felony in the future.  (§§ 667, subds. (d)(1), (e)(2)(A)(ii), 1192.7, subd. (c)(11), (31); *People v. Benson* (1998) 18 Cal.4th 24, 26–33.)

---

[3]  Penal Code section 245, subdivisions (a)(1) and (c); Vehicle Code sections 2800.2, subdivision (a) and 2800.4; Penal Code section 18, subdivision (a).  Counts 2, 3, and 4 are "wobblers," meaning that a conviction may be punished as either a felony or a misdemeanor, at the court's discretion.  (See *People v. Park* (2013) 56 Cal.4th 782, 789.)

In July 2021, pursuant to a negotiated disposition, Mitchell entered pleas of no contest to the felony of driving with willful or wanton disregard for safety while fleeing from an officer (count 4), which is not a strike offense, and to the misdemeanor of driving with a BAC of 0.08 percent or higher. She also admitted that she had previously been convicted of robbery, qualifying her for sentencing under the Three Strikes law. To supply the factual basis for the plea, Mitchell admitted that she "drove recklessly while evading a police officer." The punishment for the felony offense was 16 months, two years or three years (Veh. Code, § 2800.2, subd. (a); Pen. Code, § 18, subd. (a)), and Mitchell stipulated to the aggravated term of three years in state prison, to be doubled because of the robbery strike conviction. Before accepting the plea, the court advised Mitchell that "this is a stipulated plea agreement, which means that when we come back for sentencing, you cannot argue for less time, and the district attorney cannot argue for more time." Mitchell indicated that she understood. In light of the plea, all additional allegations, including the assault charges, which would carry longer potential sentences and would qualify as strikes, were dismissed. The court found her guilty and imposed the agreed-upon six-year prison sentence.

Mitchell appealed and, while her appeal was pending, Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) went into effect. (Stats. 2021, ch. 731.) One of the amended provisions, section 1170(b), now reads in part: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term," unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment

5

exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170(b)(1), (2).)[4] The effect of the amendment is to limit a sentencing court's authority to impose an upper term sentence. (*People v. Lynch* (2024) 16 Cal.5th 730, 763, 773 (*Lynch*).)

Mitchell argued in the Court of Appeal that amended section 1170(b) applied retroactively, requiring reduction of her sentence to the middle term. The Court of Appeal disagreed, reasoning: "where there is a stipulated plea like here, there is no occasion for the trial court to find any aggravating facts in order to justify the imposition of an upper term at sentencing. [Mitchell] agreed to a term of six years pursuant to a stipulated plea and the trial court simply sentenced [Mitchell] according to the terms of the plea agreement." (*People v. Mitchell* (2022) 83 Cal.App.5th 1051, 1059.) Accordingly, the Court of Appeal concluded that amended section 1170(b) did not apply because the trial court "had no opportunity to exercise any discretion in deciding whether the imposition of the upper, middle, or lower term would best serve 'the interests of justice.'" (*Mitchell*, at p. 1058.)

---

[4] Notwithstanding these provisions, the court "may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170(b)(3); see *People v. Wiley* (2025) 17 Cal.5th 1069, 1078–1086 [interpreting the scope of the prior conviction exception].) Section 1170(b)(1), (2) and (3), set out the requirements for imposing an upper term sentence in their totality. For ease of reference, we will sometimes employ an abbreviated reference to section 1170(b) or 1170(b)(2).

We granted Mitchell's petition for review. Since that time, one published case has agreed with the Court of Appeal's reasoning here. (*People v. Sallee* (2023) 88 Cal.App.5th 330, 337–340, review granted Apr. 26, 2023, S278690 (*Sallee*).) Several others have rejected it. (*People v. De La Rosa Burgara* (2023) 97 Cal.App.5th 1054, 1061–1064, review granted Feb. 21, 2024, S283452 (*De La Rosa Burgara*); *People v. Fox* (2023) 90 Cal.App.5th 826, 831–835 (*Fox*); *People v. Todd* (2023) 88 Cal.App.5th 373, 377–382, review granted Apr. 26, 2023, S279154 (*Todd*).) We reverse the Cout of Appeal's judgment. The resolution here does not turn on whether the trial court exercised discretion in imposing the agreed-upon sentence. Instead, it turns on the nature of the rights Mitchell waived when she accepted the bargain. We conclude she cannot be said to have waived the later-created right, which applies retroactively to her nonfinal judgment, and of which she was not, and could not have been, made aware.

## II. DISCUSSION

### A. California's Determinate Sentencing Law

In *Lynch*, *supra*, 16 Cal.5th at pages 746–748 we explained the evolution of California's determinate sentencing law. We summarize that explanation here.

As initially enacted in 1977, section 1170(b) required that, when a statute specified three terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (§ 1170, former subd. (b); Stats. 1977, ch. 165, § 15, pp. 647, 648; see *Cunningham v. California* (2007) 549 U.S. 270, 276–278 (*Cunningham*).) The accompanying rule of court required that those circumstances be proved by a preponderance of the

evidence. (Cal. Rules of Court, former rule 4.420(b).) "Under that scheme the trial court, not the jury, determined the facts bearing on aggravation or mitigation employing the lower standard of proof." (*Lynch, supra,* 16 Cal.5th at p. 746.)

In 2007, the United States Supreme Court found this sentencing scheme unconstitutional because "under the Sixth Amendment, any fact [other than a prior conviction] that exposes a defendant to a greater sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham, supra,* 549 U.S. at p. 281, accord, *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490.) The high court indicated California could solve the constitutional conundrum by directly providing a jury trial right with proof beyond a reasonable doubt for aggravating facts, or it could change its sentencing structure to give trial courts broader discretion without the need for additional judicial factfinding. (*Cunningham,* at pp. 293–294.) California chose the latter option. The Legislature responded to *Cunningham* by no longer making the middle term the presumptive sentence and instead conferring broad discretion on trial courts to select any term from among a sentencing triad's three options. (§ 1170, former subd. (b), enacted by Stats. 2007, ch. 3, § 2, pp. 6–7.)

As of January 1, 2022, the Legislature decided to follow a different course and again amended section 1170(b) as described above. (Stats. 2021, ch. 731, § 1.3.) In *Lynch,* we held that the amended sentencing scheme now dictates as a matter of constitutional right that, absent a stipulation or waiver, any aggravating fact other than a prior conviction relied on to support an upper term sentence must be found true by a jury

beyond a reasonable doubt. (*Lynch*, *supra*, 16 Cal.5th at pp. 755–767.)

## B. Application of Section 1170(b)'s Amendments to Stipulated Upper Term Sentences

The parties agree, as a general matter, that Senate Bill 567's amendments to section 1170(b)(1), (2), and (3) are ameliorative and, under the authority of *In re Estrada*, *supra*, 63 Cal.2d 740, the amendments apply retroactively to cases not final on appeal. Indeed, the Attorney General explicitly states, "[t]here is no dispute that the ameliorative amendments in SB 567 apply retroactively to nonfinal judgments." In *Lynch*, we accepted a similar concession by the Attorney General after noting uniform agreement on that point in the Courts of Appeal. (*Lynch*, *supra*, 16 Cal.5th at p. 749.) We do so again here.

Despite this concession, the Attorney General argues that defendants like Mitchell, who agreed to an upper term sentence as part of a negotiated plea agreement, are not entitled to any benefit from section 1170(b)'s amended provisions. As the Attorney General sees it, " 'the issue before [the court] is not whether Senate Bill No. 567 applies retroactively, but rather whether it applies at all in the context of a stipulated plea.' " (Quoting *Sallee*, *supra*, 88 Cal.App.5th at p. 335, fn. 3, review granted.) Relying on the statutory text and well-established principles governing plea bargains, the Attorney General argues that a trial court imposing a negotiated sentence pursuant to a plea bargain is not sentencing the defendant under the provisions of section 1170(b), nor is it considering aggravating or mitigating circumstances in order to justify the term imposed. Instead it is merely imposing a valid sentence to which the

parties have agreed. As noted, the Court of Appeal adopted a similar analysis to deny Mitchell relief.

Mitchell, by contrast, contends that she is entitled to relief from her upper term sentence under the retroactive application of section 1170(b). She reasons that section 1170(b) only allows an upper term when (1) the defendant admits to, or a trier of fact finds, relevant facts to have been proven beyond a reasonable doubt, and (2) the court concludes that the facts as found justify the upper term. She argues that Senate Bill 567 did not provide for a blanket exception in the case of a plea agreement that specifies an upper term sentence. Because nothing in the record here satisfies the current statutory requirements, Mitchell reasons that her upper term sentence is legally unauthorized and the proper remedy is to reduce her sentence to the statutorily permissible middle term, doubled under the Three Strikes law.

We begin with the Attorney General's claim that the requirements of section 1170(b) do not apply to upper term sentences negotiated by plea bargain. The Attorney General focuses on the text of the provision, arguing that it applies only when a trial court exercises its "sound discretion" in imposing one of three possible terms (§ 1170 (b)(1)) and that a trial court sentencing a defendant to an agreed-upon term pursuant to a plea bargain does not select between the upper, middle, and lower terms. But *Lynch* tells us that section 1170(b) is not so limited. The statute, by its terms, governs sentences imposed pursuant to a statutory triad. (§ 1170, subds. (a)(3), (b)(1).) It sets forth several provisions governing such sentences. One of those provisions, section 1170(b)(2), restricts the court's authority to impose a sentence "exceeding the middle term" unless aggravating circumstances justify that term, and the

facts underlying those circumstances have been stipulated to by the defendant or found true at a jury or court trial. *Lynch* held that the effect of the statute is to make the middle term the maximum term the court can legally impose absent the additional findings the statute requires. (*Lynch, supra,* 16 Cal.5th at p. 759.) Here, the parties' agreement specified an upper term sentence on count 4, doubled pursuant to the Three Strikes law, and the trial court imposed that sentence. At oral argument, the Attorney General acknowledged that the trial court, in accepting a plea bargain, is required to impose a sentence authorized by law. (See *People v. Kim* (2011) 193 Cal.App.4th 1355, 1363 (*Kim*).)

As we see it, the real question posed by the Attorney General's position is whether a defendant may waive section 1170(b)'s limitation on upper term sentences and permit the trial court to impose such a sentence *pursuant to the parties' agreement* and without the need to independently determine whether aggravating facts "*justify*" the sentence. (§ 1170(b)(2), italics added.) The statute provides that the defendant may "stipulate[]" to the existence of facts, thereby permitting the trial court to rely on those facts to impose the sentence. (*Ibid.*) It also contemplates that the defendant may waive a jury trial in favor of a court trial. (*Ibid.* [referring to facts found true "by the judge in a court trial"].) It does not expressly address a circumstance where the parties agree to imposition of an upper term sentence as part of a negotiated plea bargain and the court accepts the terms of that bargain.

That practice, however, was well established at the time of section 1170(b)'s amendment in 2021. " 'Plea negotiations and agreements are an accepted and "integral component of the criminal justice system and essential to the expeditious and fair

administration of our courts." [Citations.] Plea agreements benefit that system by promoting speed, economy, and the finality of judgments.' " (*Prudholme*, *supra*, 14 Cal.5th at p. 970, quoting *People v. Segura* (2008) 44 Cal.4th 921, 929 (*Segura*).) "When parties enter a plea bargain, each side negotiates to gain a benefit. The prosecution most often agrees to a term that is less than the defendant's maximum exposure, obviating the need for a trial and thus lessening the burden on victims, witnesses and the system itself while providing the certainty of a conviction. As here, the defense often achieves the benefit of counts being dismissed or reduced and gains the protection of a more limited exposure to what would otherwise be the risk of harsher punishment. The court may be actively involved in the negotiations and, in any event, must approve the plea agreement, making it the ultimate arbiter of whether the disposition is fair and appropriate." (*Prudholme*, at p. 970.)

Section 1192.5, subdivision (a) provides, with exceptions not applicable here, that "[u]pon a plea of guilty or nolo contendere to an accusatory pleading charging a felony, . . . the plea may specify the punishment to the same extent as it may be specified by the jury on a plea of not guilty or fixed by the court on a plea of guilty, nolo contendere, or not guilty, and may specify the exercise by the court thereafter of other powers legally available to it." "Although a plea agreement does not divest the court of its inherent sentencing discretion, 'a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain. [Citation.] "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.] Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly.' "

(*Segura*, *supra*, 44 Cal.4th at p. 931.) Section 1192.5, subdivision (b) expressly provides that once it approves a plea agreement, "the court may not proceed as to the plea other than as specified in the plea."

Accordingly, in accepting a plea bargain that includes an agreed-upon sentence, the trial court does not exercise its discretion to select the appropriate term. Instead, the court considers the more limited question of whether to accept or reject the parties' bargain. (*Stamps*, *supra*, 9 Cal.5th at pp. 701, 705–707; *Sallee*, *supra*, 88 Cal.App.5th at pp. 338, 340, review granted.) In making that determination, the court considers whether its approval of the plea bargain "represent[s] an informed decision in furtherance of the interests of society." (*In re Alvernaz* (1992) 2 Cal.4th 924, 941.) The court must also satisfy itself that the plea is freely and voluntarily made, and that there is a factual basis for the plea. (§ 1192.5, subd. (c); *People v. Palmer* (2013) 58 Cal.4th 110, 112.) Ultimately, if the court accepts the parties' agreed-upon disposition, it need not state reasons for its sentencing order reflecting that agreement. (*Sallee*, at p. 340, fn. 4; *People v. Villanueva* (1991) 230 Cal.App.3d 1157, 1162; *People v. Childress* (1987) 189 Cal.App.3d 1220, 1222.) "It is an adequate reason for a sentence or other disposition that the defendant, personally and by counsel, has expressed agreement that it be imposed and the prosecuting attorney has not expressed an objection to it." (Cal. Rules of Court, rule 4.412(a).)

"[T]he Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted.'" (*People v. Frahs* (2020) 9 Cal.5th 618, 634.) Absent some indication in the statutory language or the legislative history that the Legislature intended to supersede this well-

established body of law, we presume the trial court remains authorized to impose an upper term sentence pursuant to the parties' agreement. (See *Stamps*, *supra*, 9 Cal.5th at p. 701.)

Section 1170(b) itself does not mention negotiated dispositions or section 1192.5 one way or the other. Section 1170, subdivision (a) includes a statement of legislative findings and declarations addressing the purpose of incarceration, with an emphasis on "rehabilitation and successful community reintegration." (§ 1170, subd. (a)(1).) To that end, the statute declares that "[t]his purpose is best served by terms that are proportionate to the seriousness of the offense with provision for uniformity in the sentences of people incarcerated for committing the same offense under similar circumstances." (*Ibid.*)

As with the statute itself, the legislative history of Senate Bill 567 emphasizes the defendant's ability to stipulate to facts or to waive a jury trial in favor of a bench trial. The history sets forth in detail the evolution of California's determinate sentencing law and the high court's holding in *Cunningham*. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended May 20, 2021, pp. 4–5.) It explains that "[t]his bill would allow a court to impose a sentence for a criminal offense which exceeds the middle term only when there are circumstances in aggravation that justify a term of imprisonment exceeding the middle term and when those facts have been submitted to the factfinder and proven beyond a reasonable doubt, or when admitted by the defendant. However, this requirement would not apply to proving prior convictions, which can still be proven by a certified record of conviction." (*Id.* at p. 5.) In addressing the burdens on the criminal justice system, the analysis observes: "[I]n *Blakely* [*v. Washington*

(2004)] 542 U.S. 296, the United States Supreme Court acknowledged that a defendant could waive his Sixth Amendment right and consent to judicial fact-finding either as part of a plea-agreement or as part of a bifurcated trial [Citation.] As a practical matter, this procedure is often utilized in California courtrooms. For example, although a defendant has a statutory right to a trial by jury on his prior convictions [citations], defendants often waive that right or admit the priors. It should also be noted that most criminal proceedings are resolved by plea. Therefore, while jury trial on aggravating factors would impact the judicial system, not all cases would result in these trials." (*Id.* at p. 6.)

The legislative analysis also quotes the bill's author. (See *Make UC a Good Neighbor v. Regents of University of California* (2024) 16 Cal.5th 43, 60–61, fn. 19.) The author's statement explains that, under current law, sentencing judges are allowed " 'to impose any of the three sentencing terms so long as they state a reason for any of the sentences.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 567, *supra*, as amended May 20, 2021, p. 3.) According to the bill's author, this has " 'led to individuals serving maximum prison sentences without the opportunity to effectively refute alleged aggravating facts.' " (*Ibid.*) The author's statement urges the Legislature to reverse the " 'mass incarceration trend' " by requiring that " 'the harshest sentences receive the greatest scrutiny and justification before they are meted out.' " (*Ibid.*) To that end, the bill's author emphasizes the need " 'to ensure that aggravating facts are presented to the jury before a judge imposes a maximum sentence as decided in *Cunningham,*' " and to " 'ensure that the individuals facing time have the ample ability to dispute information in the record that might not be

true.' " (*Ibid.*) The author also notes the defendant's ability to stipulate to aggravating facts or to waive jury trial in favor of a court trial. (*Id.* at p. 4.) Another analysis, quoting the bill's co-sponsor, similarly states: "it is imperative that the law be changed to ensure that aggravating facts are presented to the jury before a judge may impose a maximum sentence. This will help prevent individuals from serving maximum sentences when a lower term is more appropriate based on the facts." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 567 (2021–2022 Reg. Sess.) as amended Mar. 9, 2021, p. 7.)

The legislative history does not expressly discuss negotiated dispositions; but it does acknowledge that most cases are resolved by plea. The expressed statements contained in the legislative history emphasize the need for reliability and factfinding before a trial court decides to impose the harshest sentence. They do not demonstrate an intent to supersede existing statutory and case law which allows the parties themselves to negotiate the proper disposition, including an upper term sentence, subject to the court's approval of the bargain in the interests of justice. Nor are the Legislature's stated goals in tension with this long-standing practice, which generally reduces the defendant's overall exposure to punishment and avoids the additional cost and delay often attendant upon a jury trial. (See *Prudholme, supra*, 14 Cal.5th at p. 970.)

Accordingly, we hold that a plea bargain that includes a stipulated upper term sentence absolves the trial court of its duty to determine that the sentence is justified by facts found in compliance with section 1170(b)(2)'s provisions. But this is only true if the defendant, in entering the plea bargain, validly waives section 1170(b)'s requirements. As the Court of Appeal

observed in *Todd, supra,* 88 Cal.App.5th 373, review granted, "[a]bsent the finding and articulation of such justification and facts, *or a valid waiver of these new requirements*, the imposition of the aggravated term is outside the discretion of the sentencing court under newly amended section 1170, subdivision (b)." (*Id.* at p. 379, italics added.) Further, because section 1170(b)(2) gives rise to a constitutional imperative (*Lynch, supra,* 16 Cal.5th at pp. 755–767) the defendant's waiver must comply with the requirements for waiving a constitutional right. (*Blakely v. Washington, supra,* 542 U.S. at p. 310; see generally *People v. Farwell* (2018) 5 Cal.5th 295, 299–300; *People v. Sivongxxay* (2017) 3 Cal.5th 151, 166; *People v. Collins* (2001) 26 Cal.4th 297, 304–305.)

## C. Mitchell Is Entitled to the Retroactive Benefit of Section 1170(b)

Mitchell's plea was valid when it was entered. (See *Lynch, supra,* 16 Cal.5th at pp. 750–751.) But the law was subsequently changed to her benefit, and she seeks retroactive application of section 1170(b)'s new requirements to her nonfinal judgment. The Attorney General has conceded retroactive application of section 1170(b) in general, and we have concluded that its provisions govern negotiated dispositions absent a valid waiver. Accordingly, Mitchell is entitled to the retroactive benefit of section 1170(b)'s provisions notwithstanding her agreement to a specified term as part of a plea bargain. We disapprove *People v. Sallee, supra,* 88 Cal.App.5th 330, 338–341, review granted, to the extent it is inconsistent with today's holding.

It is undisputed that the trial court did not comply with the current requirements of section 1170(b)(2), which were not

in effect at the time of Mitchell's original sentencing. The court did not identify any properly proven aggravating facts that would justify imposing an upper term sentence on count 4. Instead, it simply accepted the parties' agreement to that sentence.[5]

Nor did Mitchell validly waive section 1170(b)'s new requirements when she entered her plea. As we explained in *French*, *supra*, 43 Cal.4th 36, "[a]t the time that defendant entered his plea of no contest, he expressly waived his right to a jury trial on the substantive offenses, but this waiver did not encompass his right to a jury trial on any aggravating circumstances." (*Id.* at p. 48.) Similarly, when Mitchell entered her plea, section 1170(b) gave the trial court broad discretion to select among any of the three available terms of punishment, thus eliminating any Sixth Amendment concerns as to the imposition of sentence. (*Cunningham*, *supra*, 549 U.S. at pp. 293–294.) Mitchell's "waiver of jury trial on the offenses in connection with [her] no contest plea cannot reasonably be interpreted to extend to proof of aggravating circumstances when, at the time of the plea, no right to a jury trial on such circumstances had been recognized." (*French*, at p. 48.)

---

[5]     The Attorney General's opposition to Mitchell's claim of error is limited to the argument that section 1170(b) does not apply here, either as a matter of statutory interpretation or by application of implied waiver and estoppel principles (discussed *post*). He does not contest Mitchell's assertion that the requirements of section 1170(b) were not satisfied on this record. Nor does he contend the omission was harmless beyond a reasonable doubt. (See *Lynch, supra*, 16 Cal.5th at p. 768; *People v. French* (2008) 43 Cal.4th 36, 52–54 (*French*).)

Anticipating this conclusion, the Attorney General argues that, "[b]y agreeing to a specific term of imprisonment," Mitchell "implicitly waived" any right to be sentenced in accordance with section 1170(b) and is therefore "estopped" from invoking that statute "to challenge the imposition of the sentence [that] she agreed to and . . . the court had — and still has — fundamental jurisdiction to impose." He relies on *People v. Hester* (2000) 22 Cal.4th 290 (*Hester*) for support. *Hester* is distinguishable. There, the defendant pleaded no contest to several charges in return for a stipulated sentence of four years. (*Id.* at p. 293.) The trial court imposed the stipulated sentence on a burglary charge and, without objection by the defendant, imposed a three-year, unstayed concurrent term for a separate assault charge. (*Ibid.*) On appeal, the defendant argued that the sentence was unauthorized insofar as the three-year concurrent term was not stayed under section 654, which "precludes multiple punishments for a single act or indivisible course of conduct." (*Hester*, at p. 294.) We held that the defendant's acceptance of the plea agreement and his failure to object or to seek to withdraw his plea when the sentence was announced, constituted "an implicit waiver of section 654 rights." (*Id.* at p. 295.)

The Attorney General's reliance on *Hester* is misplaced. The rationale for our "implicit waiver" finding in that case was "that defendants who have received the benefit of their bargain should not be allowed to trifle with the courts by attempting to better the bargain through the appellate process." (*Hester*, *supra*, 22 Cal.4th at p. 295.) The concern about trifling existed in *Hester* because section 654's limits were already well established at the time the defendant in that case accepted the sentence without objection. That concern is not at play here

because Senate Bill 567's amendments to section 1170(b) were not operative at the time of Mitchell's sentence. They took effect only after Mitchell was sentenced and filed a notice of appeal. She could not have invoked those amendments at the time of sentencing, and we decline to find that her acceptance of her sentence was an implicit waiver of rights that did not exist at the time.

In this respect, the situation is more akin to *French*, *supra*, 43 Cal.4th 36. There, the defendant waived his right to a jury trial and entered a plea agreement before the Supreme Court's decision in *Blakely v. Washington*, *supra*, 542 U.S. 296. By the time of sentencing, *Blakely* had been decided, but French did not raise a Sixth Amendment claim at the sentencing hearing or otherwise object to the sentence imposed. (*French*, at pp. 46, 48.) We rejected the Attorney General's forfeiture argument, noting that the question before us was not governed by forfeiture principles, but rather by the requirement of a knowing and intelligent waiver of the constitutional jury trial right. (*Id.* at pp. 46–47.) At the time of the plea, French expressly waived his right to a jury trial on the substantive offenses, but he had not been asked to do so as to any aggravating circumstances, because *Blakely*, which established the right, had not yet been decided. (*Id.* at p. 48.) As a result, we concluded the Sixth Amendment claim was properly raised on appeal. (*Ibid.*) A similar conclusion follows here.

We draw further support from the provisions of section 1016.8, which the Legislature enacted in 2019. (Stats. 2019, ch. 586, § 1, eff. Jan. 1, 2020.) That statute prohibits the practice of including plea bargain terms that would immunize the plea from modification by future changes in the law. In doing so the Legislature codified the following findings and declarations:

"[A]s a general rule, plea agreements are deemed to incorporate the reserve power of the state to amend the law or enact additional laws for the public good and in pursuance of public policy. That the parties enter into a plea agreement does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them." (§ 1016.8, subd. (a)(1).)[6] "[B]ecause of the significant constitutional rights at stake in entering a guilty plea, due process requires that a defendant's guilty plea be knowing, intelligent, and voluntary." (§ 1016.8, subd. (a)(2).) For a waiver to be voluntary, intelligent, and intentional it must relinquish a known right or privilege. "Waiver requires knowledge that the right exists [citation]." (*Id.*, subd. (a)(3).) Subdivision (a)(4) of the statute further declares that "[a] plea bargain that requires a defendant to generally waive unknown future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may occur after the date of the plea is not knowing and intelligent." And subdivision (b) of that section states that "[a] provision of a plea bargain that requires a defendant to generally waive future benefits of legislative enactments, initiatives, appellate decisions, or other changes in the law that may retroactively apply after the date of the plea is void as against public policy."

By its terms, section 1016.8 governs plea bargains that expressly waive unknown future benefits of ameliorative legislation. Here, there was no such express waiver. But it stands to reason that we should not, *by implication*, find a

---

[6]     Section 1016.8 codified our holding in *Doe v. Harris* (2013) 57 Cal.4th 64 and expressly cites *Doe* as authority for this proposition. (§ 1016.8, subd. (a)(1).)

waiver of unknown future benefits that could not have been entered into expressly. Interpreting the provisions of section 1170(b) in light of section 1016.8, we conclude that the fact the parties entered into a plea agreement "does not have the effect of insulating them" from the retroactive changes enacted by Senate Bill 567. (§ 1016.8, subd. (a)(1); accord, *Todd*, *supra*, 88 Cal.App.5th at p. 379, review granted.) Were we to conclude otherwise, we would render Mitchell's plea bargain to a stipulated upper term sentence "the very waiver of 'unknown future benefits of legislative enactments' that the Legislature has deemed void as against public policy because [her] entry of plea on those terms was not 'knowing and intelligent.' " (*Todd*, at p. 380, quoting § 1016.8, subd. (a)(4).) The Attorney General's "implied waiver" argument fails.

## D. Remedy

We turn to the question of remedy. Mitchell urges that she is entitled to have her upper term sentence reduced to the middle term, doubled under the Three Strikes law. She argues that the remainder of the plea bargain should remain intact, including dismissal of counts and insulation from exposure to a substantially higher sentence. The Attorney General argues that the case should be remanded for further proceedings.

Section 1170(b) now requires that facts, other than a prior conviction, must be proven to a jury beyond a reasonable doubt, before a court may rely on them to impose an upper term sentence. As explained above, the trial court did not comply with these new requirements, nor did Mitchell waive them when she entered her plea of no contest and agreed to an upper term sentence. In analogous circumstances, we have held that a remand, permitting the defendant to either waive or assert her

right to jury trial, is appropriate. For example, *In re Sutherland* (1972) 6 Cal.3d 666 held that the defendant's guilty plea did not comply with the new admonition and waiver requirements articulated in *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122. (*Sutherland*, at pp. 668–671.) We concluded that the remedy was to permit the defendant to withdraw his plea. (*Id.* at p. 672.) *French*, *supra*, 43 Cal.4th 36 held that, because the defendant's no contest plea did not comply with the newly recognized jury trial requirements of *Cunningham*, *supra*, 549 U.S. 270, the defendant was entitled to a remand for resentencing. (*French*, at pp. 41, 46–52, 55.) The Courts of Appeal have similarly found that when section 1170(b) is applied retroactively to cases involving stipulated sentences, the proper remedy is a remand so that the defendant may assert or waive section 1170(b)'s new requirements. (*De La Rosa Burgara*, *supra*, 97 Cal.App.5th at pp. 1063–1064, review granted; *Fox*, *supra*, 90 Cal.App.5th at p. 835; *Todd*, *supra*, 88 Cal.App.5th at pp. 380–381, review granted.)

We agree with the lower courts that remand is the appropriate remedy here. In reaching that conclusion, we find our holding in *Stamps*, *supra*, 9 Cal.5th 685 instructive. There the defendant argued that, under a 2018 amendment to section 1385, he was entitled to have a trial court "consider striking the serious felony enhancement" to which he had stipulated in a plea agreement "while otherwise maintaining the plea agreement intact." (*Stamps*, at p. 700.) We rejected this approach. The amendment to section 1385, we explained, was "silent regarding pleas and provide[d] no express mechanism for relief," which "undercut[] any suggestion that the Legislature intended to create special rules for plea cases involving serious felony enhancements." (*Stamps*, at p. 704.) We further

concluded that "[n]othing in the language and legislative history of" the legislation at issue in *Stamps* "suggest[ed] an intent to modify section 1192.5's mandate that 'the court may not proceed as to the plea other than as specified in the plea' without the consent of the parties." (*Ibid.*) Accordingly, *Stamps* declined to allow the trial court on remand to " 'unilaterally modify[] the terms of [a plea] bargain without affording . . . an opportunity to the aggrieved party to rescind the plea agreement and resume proceedings where they left off.' " (*Id.* at p. 701, quoting *Kim*, *supra*, 193 Cal.App.4th at p. 1361.)

We find the analysis of *Stamps* applicable here. As the court in *Fox*, observed, "Although *Stamps* involved legislation that conferred 'new discretionary authority' on trial courts, not legislation that circumscribed the authority to impose a particular term, [we] 'perceive[] no reason to treat the two circumstances differently.' " (*Fox*, *supra*, 90 Cal.App.5th at p. 833, quoting *Todd*, *supra*, 88 Cal.App.5th at p. 380, review granted.) Here, Mitchell agreed to an upper term sentence before section 1170(b) was amended. The appropriate remedy is to allow Mitchell to reconsider her plea in light of the change. If she chooses to keep the bargain she negotiated, she may affirm her agreement and enter the appropriate waivers of section 1170(b)'s current requirements. Alternatively, she may withdraw her assent to the bargain and return the parties to a pre-plea posture, where the prosecutor will be held to its burden of proof.[7] In no scenario, however, is she entitled to a unilateral reduction of her upper term sentence to the middle term.

---

[7] In *Stamps*, the defendant's remedy was to invite the court to exercise its discretion under section 1385 to strike a prior

Mitchell argues that *Stamps* is inapposite, and urges us to follow *Harris v. Superior Court* (2016) 1 Cal.5th 984 instead. That case is distinguishable. In *Harris*, the defendant petitioned for reduction of his felony theft conviction to a misdemeanor pursuant to Proposition 47 (Gen. Elec. (Nov. 4, 2014)), which reduced certain crimes from felonies to misdemeanors. (*Harris*, at p. 988.) Applying *Doe v. Harris*, *supra*, 57 Cal.4th 64, we rejected the Attorney General's claim that the reduction violated the plea agreement, and we declined to allow the People to withdraw from the plea bargain. (*Harris*, at p. 991.) We reasoned that Proposition 47's express mention of convictions by plea contemplated relief to all eligible defendants. (*Harris*, at p. 991.) Proposition 47's "resentencing process," we explained, "would often prove meaningless if the prosecution could respond to a successful resentencing petition by withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner."

felony conviction, with the caveat that the court could not unilaterally modify the terms of the plea bargain without allowing the prosecutor to withdraw its consent. (*Stamps*, *supra*, 9 Cal.5th at p. 707.) Here, if Mitchell elects to invoke the provisions of section 1170(b), her remedy is to withdraw her assent to the bargain and return the parties to the status quo ante.

This conclusion is consistent with our holding in *Stamps*, *supra*, 9 Cal.5th 685 that a certificate of probable cause was not required to assert the benefit of a change in the law, even though the remedy could have consequences for the plea bargain. In *Stamps* we explained that the defendant's appellate claim "does not constitute an attack on the validity of his plea because the claim does not challenge his plea as defective *when made*." (*Id.* at p. 696, italics added.) Stamps sought relief "because the law subsequently changed to his potential benefit." (*Id.* at p. 698.) The same is true here.

(*Harris*, at p. 992.)   Mitchell contends that the Legislature's general goal to lower sentences by enacting Senate Bill 567 supports her contention that the Legislature intended to unilaterally modify existing plea agreements.  Not so.

Nothing in the text of amended section 1170(b) conveys a legislative intent to reduce sentences across the board regardless of the parties' agreement.  Section 1170(b) does not single out specific offenses for reduced punishment or distinguish between felonies and misdemeanors, as did the legislation at issue in *Harris*.  Nor do the provisions of section 1170(b) render an upper term sentence unauthorized for Mitchell.  (See *Lynch, supra*, 16 Cal.5th at p. 751.)   "The sentence was authorized when it was imposed.  It continues to be permissible under the current statute so long as the aggravating facts are either stipulated to by the defendant or found true by a jury beyond a reasonable doubt." (*Ibid*.)  We are thus unpersuaded that *Harris* governs here.

Mitchell's reliance on Senate Bill 567's legislative history fares no better.  As summarized in detail above, the bill's author did express concern that the current state of the law has " 'led to individuals serving maximum prison sentences without the opportunity to effectively refute alleged aggravating facts.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 567, *supra*, as amended May 20, 2021, p. 3.)  But the legislation did not seek to address the concern by abolishing upper term sentences.   Rather, it sought to ensure that "the harshest sentences receive the greatest scrutiny and justification before they are meted out" (*ibid*.) by requiring that aggravating facts be litigated at trial or stipulated to before a maximum sentence may be imposed (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 567, *supra*, as amended Mar. 9, 2021, p. 7).   These

statements of purpose, which appear in legislative committee materials, are entirely consistent with our conclusion that defendants like Mitchell, whose cases were not final when the statute was amended, may retroactively assert the protections that section 1170(b) affords. But they do not support Mitchell's further claim that the Legislature has "done away with" the aggravated sentence that Mitchell agreed to as part of her bargain. Instead the Legislature has ensured that defendants have the opportunity to dispute the existence of facts that might be relied upon to justify an upper term by subjecting them to adversarial testing before a judge or jury applying a beyond-a-reasonable-doubt standard of proof. A remand here affords Mitchell the opportunity to assert or waive that right.[8]

---

[8]    For similar reasons, we find our recent decision in *Prudholme*, *supra*, 14 Cal.5th 961 distinguishable. *Prudholme* held that Assembly Bill No. 1950 (2019–2020 Reg. Sess.), which limited probation to two years for most felonies, operated to unilaterally shorten the defendant's probation term even though he had agreed to a longer probation term as part of a plea agreement. (*Id.* at pp. 963, 977.) We explained that, while the text of Assembly Bill No. 1950 was not as clear as Proposition 47 (which we examined in *Harris*), the legislative history reflected an intent for the time limitation on probation terms to extend across the board, such that a *Stamps*-like remand procedure was not appropriate. (*Prudholme*, at p. 977.) Reviewing the legislative history, we concluded that the Legislature had "signaled its view that, for an eligible defendant, a shorter period of probation generally serves the public's interests, regardless of how a conviction was secured." (*Ibid.*) Here, as explained, in Mitchell's case an upper term sentence remains authorized. It may lawfully be imposed for her offense so long as the requirements of section 1170(b) are met or waived. A *Stamps*-like remand for further proceedings in compliance with section 1170(b) is the appropriate remedy in this context.

Accordingly, we reject Mitchell's request that we unilaterally reduce her sentence to the middle term while leaving the advantageous aspects of her plea bargain otherwise intact. Instead, as in *Stamps,* the proper remedy is to remand this case and permit Mitchell to pursue relief under the new benefit that Senate Bill 567 confers. (*Stamps*, *supra*, 9 Cal.5th at pp. 705–709.)

On remand, Mitchell may either waive or invoke the requirements of section 1170(b). If she reaffirms her acceptance of the plea bargain and enters a new waiver of section 1170(b)'s requirements, the court shall reinstate the original sentence as negotiated by the parties. If she declines to enter that waiver, in lieu of further proceedings the parties may agree to modify the existing plea agreement to specify a midterm sentence on count 4, doubled under the Three Strikes law. (See *Stamps*, *supra*, 9 Cal.5th at p. 707.) If the court also accepts the modification it shall sentence Mitchell accordingly. (*Id.* at p. 708.) If no such agreement is reached and approved, Mitchell's remedy is to withdraw her assent to the bargain. In that case the court shall set aside the plea, the "matter shall proceed as to [Mitchell] as if no plea had been entered" (*Kim, supra*, 193 Cal.App.4th at p. 1366), and the case shall be set for trial. At that point the parties may, of course, renegotiate a disposition if they choose.

We recognize, as we did in *Stamps*, that this is not the remedy Mitchell has requested. (*Stamps*, *supra*, 9 Cal.5th at p. 708.) Accordingly, we emphasize that, "[i]n light of these potential consequences to the plea agreement, . . . it is ultimately defendant's choice whether [she] wishes to seek relief under Senate Bill [567]. . . . 'Given that defendants in criminal cases presumably obtained some benefit from the plea agreement, we

anticipate that there will be defendants who determine that, notwithstanding their entitlement to seek relief based on the change in the law, their interests are better served by preserving the status quo. That determination, however, lies in each instance with the defendant.' " (*Stamps*, at p. 708, quoting *People v. Ellis* (2019) 43 Cal.App.5th 925, 944.)[9]

---

[9] Shortly before oral argument, counsel for Mitchell filed a letter with this court identifying section 1171 as a new authority. Section 1171, effective January 1, 2025 (Stats. 2024, ch. 964, § 2) sets forth procedures governing a " 'postconviction proceeding,' " which the statute defines as "a proceeding to modify a sentence or conviction pursuant to an ameliorative statute. Ameliorative statutes include, but are not limited to, Sections 1170.18, 1172.1, 1172.6, 1172.7, and 1172.75." (§ 1171, subd. (a).) At oral argument, counsel for Mitchell urged that this statutory definition broadly encompasses a remand to the trial court in the context of a direct appeal under the authority of section 1170(b) and *Estrada*. We decline to consider this argument because we have concluded that Mitchell is entitled to a remand under our established precedent in *Stamps*. We express no view on the applicability of section 1171 to this case or how it might affect the options described above. Mitchell may raise this issue in the Court of Appeal or the trial court in the first instance.

## III.  DISPOSITION

We reverse the judgment of the Court of Appeal in part and remand the matter for further proceedings consistent with this opinion.

**CORRIGAN, J.**

**We Concur:**

**GUERRERO, C. J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**BROMBERG, J.***

.

---

*        Associate Justice of the Court of Appeal, Sixth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Mitchell

---

<u>**Procedural Posture**</u> (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 83 Cal.App.5th 1051
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S277314
**Date Filed:** May 18, 2026

---

**Court:** Superior
**County:** Mendocino
**Judge:** Victoria I. Shanahan

---

**Counsel:**

Paul F. DeMeester, under appointment by the Supreme Court, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Donna M. Provenzano, Bridget Billeter and Jalem Z. Peguero, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Paul F. DeMeester
Attorney at Law
1592 Union Street No. 386
San Francisco, CA 94123
(415) 305-7280

Jalem Z. Peguero
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3841